KAREN C. WINCKLER, ESQ.
WRIGHT STANISH & WINCKLER
300 S. Fourth Street  Suite 701
Las Vegas, NV 89101
(702) 382-4004
Attorneys for Defendant

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　　　　vs.<br><br>KATHY NELSON,<br><br>　　　　Defendant. | )<br>)<br>)<br>)<br>)　　CASE NO. 2:07-cr-132-PMP-RJJ<br>)<br>)<br>)<br>)<br>) |

## SENTENCING MEMORANDUM

Defendant KATHY NELSON, by and through her attorney, Karen C. Winckler, Esq., provides this Honorable Court with information for consideration prior to sentencing.   Ms.  Nelson  is scheduled for sentencing on April 13, 2009, at 9:00 a.m.

This motion is based upon the right to due process articulated in the Fifth Amendment to the Constitution of the United States, Title 18, United States Code, §§ 3553 and 3661, the attached Memorandum of Points and Authorities, all of the pleadings and papers heretofore filed in this case.

DATED:  April 10, 2009

WRIGHT STANISH & WINCKLER

By:_____/s/_____
　　KAREN C. WINCKLER, ESQ.
　　Nevada Bar No. 2809
　　300 South Fourth Street Ste 701
　　Las Vegas, NV 89101

1

****************

## MEMORANDUM OF POINTS AND AUTHORITIES

## A.  INTRODUCTION

KATHY NELSON (hereinafter "Kathy") entered a guilty plea, accepting responsibility for her actions, on January 7, 2009.      Kathy has remained in custody since her arrest on May 14, 2008, almost one year.

Kathy has been cooperating with the government since her arrest in May.   The government plans to submit a §5K1 motion requesting a downward departure. Although we have not yet received the motion, we are hoping that the recommendation will be at least for a downward departure of 3 levels which would present a guideline range of 24-33 months.

Kathy absconded while on pretrial release and that issue will be addressed in greater detail at Sections C - D herein.

## B.      A REASONABLE SENTENCE

### Heartland Case Analysis

The Supreme Court has re-emphasized the principle that the District Court's discretion cannot be taken away by the Sentencing Guidelines.  **Koon v. United States**, 518 U.S. 81, 116 S.Ct. 2035 (1996); **Williams v. United States**, 503 U.S. 193, 205 (1992).

> The Commission intends the sentencing courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes.  When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted, [Certain sections] list several factors that the court cannot take into account as grounds for departure.  With those specific exceptions, however, **the Commission does not intend to limit the kinds of factors, whether or not mentioned anywhere else in the guidelines, that could constitute grounds for departure in an unusual case.**
> **USSG** Ch. 1, Pt. A, Introductory Comment. 4(b) (emphasis added).

2

1   The issue at hand for a sentencing court considering a departure is whether any special

2   circumstances exist that take the case out of the "heartland" of typical cases embodied

3   in the guidelines. **Id.** at 2045.

4        The Ninth Circuit has recently reviewed the "heartland" concept in **United States**

5   **v. Paul**, __ F.3d __, [No. 08-30125] (9th Cir. 2009).   The court held that Paul was

6   outside the "heartland" and directed that a lesser sentence was, therefore, appropriate.

7   Although the facts in Kathy's case are different, we ask this Honorable Court to

8   consider the rationale set forth in **Paul** when deciding an appropriate sentence.   The

9   Ninth Circuit looked to the mitigating factors and determined that "the 16-month

10  sentence was unreasonably high" for Ms. Paul. **Id.** at 5931.   The court discussed

11  several mitigating factors.   As with Ms. Paul, Kathy has no prior criminal history, no

12  experience with the criminal justice system.  She is a first-time offender.  Like Ms.

13  Paul's taking of school district funds violating DOL regulations, Kathy violated DOL

14  regulations when she did not notify DOL that the aliens were to be working in locations

15  different than stated in the Petition.  In addition to apologizing and accepting

16  responsibility for this conduct, Kathy has assisted the government in their investigations

17  of conspiracies involving temp employment agencies and she has tried to assist with

18  locating her co-defendants who are fugitives from justice.

19       The "heartland" sentencing guidelines are harsh for a defendant like Kathy who

20  is not within the mainstream of offenders.   She is exactly the type of defendant

21  identified as "outside the heartland" in **Paul.**  When reviewing the "heartland" in a DOL

22  regulation violation, the court is asked to consider the principles set forth in §3553.

23  **§3553 Sentencing Principles**

24       A sentencing court  may vary from the applicable guideline range, so long as the

25  variance and degree of variance is justified by the factors set forth in Section 3553(a).

26  United States v. Booker, 125 S.Ct. 738, 764-65 (2005); United States v. Zavala, 443

27

28                                                    3

1   F.3d 1165, 1170-71 (9th Cir. 2006).   In applying the Section 3553(a), a sentencing

2   court must ultimately "impose a sentence sufficient, but not greater than necessary, to

3   comply with the purposes set forth in paragraph 2."   Section 3553(a)(2) states that

4   such purposes are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

10  Section 3553(a) further directs sentencing courts to consider:  the nature and

11  circumstances of the offense and the history and characteristics of the defendant; the

12  need for the sentence imposed; the kinds of sentences available; the sentencing range

13  as calculated in Sentencing Guidelines, Sentencing Guidelines policy statements, the

14  need to avoid unwanted sentencing disparities among defendants with similar records

15  who have been found guilty of similar conduct; and the need to provide restitution to

16  any victims of the offense.

17      The Ninth Circuit's interpretation of **Booker** requires that a sentencing court

18  accord equal weight to each of the factors enumerated in §3553, as well as the

19  Sentencing Guidelines.  **Zavala**, 443 F.3d at 1170-71.  The _Zavala_ Court instructs

20  sentencing courts to "consider all of the information before them, as they used to do,

21  and then reach for the correct sentence under all of the circumstances." Id.  In the

22  instant case, a review of the relevant factors suggests that a lower sentence than that

23  recommended by the Probation Office is "sufficient, but not greater than necessary" to

24  satisfy the purposes of sentencing.

25      Kathy did not draft Petitions intending to defraud the DOL.  She thought she was

26  assisting aliens in finding seasonal employment and matching their skills with the needs

27

28                                    4

of employers. The fees she charged included the DOL application fees for the aliens and provided her with reasonable fees for her services. Her original good intentions were shattered when the work locations were modified to accommodate the needs of the employers. Kathy did not contact DOL and cancel the Petition. Rather, she kept the money she had been paid and helped the employers bring the aliens into the United States, now knowing that the aliens were entering illegally. [Plea, pp. 14 (d) -15 (e).]

This Honorable Court is asked to consider that, although important to maintain information on aliens, the seriousness of the instant offense is not as great as many federal crimes, that a large sentence will not provide just punishment for this violation of DOL regulations; that a lesser sentence will afford adequate deterrence to criminal conduct; that Kathy will not be committing further crimes and Kathy is able to provide herself with educational or vocational training with assistance during supervised release.

To assist the court, we provide the following background about Kathy and a discussion of her second offense and her illegal flight.

## C.   BACKGROUND

Kathy is 44 years old and has never been in trouble before. She has had an "ordinary" life experience with nothing dramatic until her arrest on the events of this case. Kathy's family life was complicated by her parents divorcing when she was seven. She lived with her mother and grandmother but they moved from place to place. As a result, she left high school in the 9th grade. She later attended community college and, over a period of 10 years, she completed 30 credits in hotel administration and computers. To support herself she worked as a waitress or a bartender, making minimum wage plus tips. She was married and divorced several times, the most recent divorce in 2008 during the pendency of this case. Kathy has not used controlled substances and uses alcohol only socially.

1    As she worked seasonal employment, she saw the paperwork that was used to

2  bring aliens into the country.  Eventually, she learned how to fill out the government

3  forms and she learned how to solicit aliens to participate in seasonal employment.   She

4  did fine for awhile, completing the DOL paperwork and working through the

5  bureaucratic regulations.   She was located in Las Vegas and worked with employers

6  long distance with much work done over the internet.

7

8  **THE FIRST CASE**

9    In 2004, Kathy filed a Petition for aliens to work in Colorado.  However, before

10  the workers were to arrive in the United States, she was told by the temp agency with

11  whom she was working that the workers were going to Florida, not Colorado.  The

12  Petition Kathy had filed for Colorado workers now was incorrect and the legal solution

13  was to contact DOL and start the application process over.   Kathy chose to ignore this

14  correct solution, mostly because she did not have the money to refund to the aliens.[1]

15  Instead, she assisted the employers [joining the conspiracy] and brought the aliens into

16  the United States telling the aliens to lie to Customs and say they were going to

17  Colorado.

18    Kathy was arrested in September, 2007, and charged with this 2004 illegal

19  conduct.[2]  Kathy was represented by PD Rene Valladares who negotiated a good deal

20  for Kathy.  But, she had to admit in the plea that she had "mailed" the Petition knowing

21  that she was providing  incorrect information to the DOL.   Kathy was unable to explain

22

23  _____

24    [1]Kathy received $500 from each alien to cover her fees, costs of preparation of
   the Petition and INS paperwork and the application fee to the DOL.   She received this
25  money up front.  If the Petition was withdrawn, she would have to refund this money.

26    [2] Her co-defendants absconded and have never faced these charges.   Both
   Gena Ramaekers and Dezrine Jones remain fugitives from justice.
27

28                                          6

1   her concerns about "mail fraud" to her lawyer. [3]   At calendar call, her lawyer told her

2   that she had 30 minutes to decide whether to accept the plea.   Kathy said she could not

3   lie and she refused to sign the plea.   The trial date was set and her attorney told her

4   she should plan on 5 years in prison.

5   **D.      THE NEXT CASE –**

6           Kathy was released on pretrial supervision.   Pretrial did not caution her to not

7   participate in DOL Petitions and there is nothing in her release paperwork about the

8   Petition work.   She was unemployed, had no car and had expenses to meet.   Knowing

9   the Petition business, Kathy decided to draft Petitions but to be very careful that every

10  fact was correct.   To this end, she researched the location which was to be serviced

11  with alien labor, worked hard to get original signatures on all parts of the application,

12  never signed any paperwork herself and filed what she believed was a correct Petition.

13  The aliens were to arrive to work in Traverse City, Michigan.   The Petition was filed in

14  November 2007 and processed by DOL.    In March, 2008, the employer told Kathy that

15  the aliens would NOT be going to Traverse City, but would be working in Detroit and

16  other nearby cities.  Kathy was horrified.   Again, the Petition was incorrect.   She had

17  used the aliens' money for her living expenses.   Knowing that she had an obligation to

18  notify DOL, Kathy stood silent.   The aliens entered the United States based upon the

19  Petition filed by Kathy.

20

21

22           [3]Current counsel spent many meetings with Kathy before finally understanding
        Kathy's problem with the plea.   She thought that the PD was telling her she had to lie
23      and say she had committed mail fraud in order to get a plea.   When Kathy mailed the
        Petition to DOL she attested to the facts and she believed the Petition was correct.
24      How could she say she had committed mail fraud?   Therefore, she refused to sign the
        plea.
25
                Current counsel reviewed the facts with Kathy and they agreed that the fraud she
26      committed was **wire** fraud, using the internet to communicate with the co-defendants
        but **after** the Petition had been mailed.   The current plea is based on wire fraud.
27

28                                              7

**KATHY FLEES -**

Kathy knew she was in big trouble.  She was terrified but, because of their earlier communication problem, she did not feel she could go to her lawyer and explain what she had done.   The PSR notes that Kathy fled Las Vegas and tried to enter Jamaica but little explanation is provided. [PSR, No. 6]  The following is not a justification for her flight, because Kathy knew it was wrong when she did it.   Kathy had never been arrested and she panicked when her plea agreement fell apart.  Then, her efforts with a DOL contract became more criminal conduct.  Emotionally distraught, Kathy responded to the mess by running.

Kathy put together a false passport and left for Jamaica to meet her boyfriend.  Her passport did not pass inspection.   At the airport in Jamaica, her ruse was discovered.  She agreed to be extradited to the United States but the Marshall did not immediately transport her to Las Vegas.   Due to this delay, Kathy missed her  trial date of July 8th.

Kathy was in shock.  She had never spent one day in jail before this case.  The conditions of confinement at NLVDC were [and are]  hideous.   The correctional officers' constant yelling and belittling of the inmates was making Kathy begin to suffer mental health problems.  Depression and anxiety made it difficult to communicate, especially as she faced a new attorney and no hope for release from custody.   Kathy has come to terms with her mistakes and is looking to the future, a future that will never again include a criminal act.

Kathy's behavior has resulted in a huge increase from the 15-month sentence negotiated by her Public Defender on the first case.   If, if , if ...   Most of the "if's" seem obvious to those of us in the criminal justice system.  If she had talked with pretrial about her second effort with DOL petitions? [They could have helped her find other work.]  If she had discussed her problems about the mail fraud with her PD so he could

8

1  understand it? [It was an easy fix once the problem was defined.]  If she had discussed

2  her second failure with the DOL petition? [She could have continued to work with the

3  people while cooperating with DOL.]  Having worked with Kathy since August, 2008,

4  she is now primed to ask many, many questions.   At first, however, she was lost,

5  unable to figure out what had happened to her life.

6

7  **E.     THE PSR AND THE PLEA**

8          P&P's sentencing calculation reflects the agreement of the parties.   However,

9  the parties had discussed that a one month consecutive sentence was sufficient to

10  meet the requirements of 18 USC §3147.

11  **Change to the language in the PSR --**

12          The parties agree and stipulate to the following change - At No. 109, strike the

13  last sentence.  This sentence overstates Kathy's knowledge of how the aliens were

14  treated once she made arrangements for them to enter the United States.   She did not

15  participate in the housing or working conditions of the aliens.  If an alien called and

16  complained about a condition, Kathy would personally call the employer about the

17  complaint.  Kathy had no direct knowledge of the housing conditions.  Plea, p. 13, lns.

18  18-24.

19  **E.     CONCLUSION:**

20          This court must determine an appropriate sentence for Kathy and "impose a

21  sentence sufficient, but not greater than necessary" to address the crime committed by

22  this defendant.  Kathy knows what she did was wrong, she has accepted responsibility

23  and she is determined to turn her life around and she has the support of family and

24  friends. [Ex. A, letters of support]

25          We respectfully ask this Court to reach for the correct sentence under all of the

26  circumstances which will allow Kathy to begin her term of supervised release as soon

27

28                                            9

1  as possible.   Kathy will shortly have served a year in custody in our local Las Vegas

2  jails.   She has struggled with this incarceration but has come to terms with the

3  punishment.  Kathy is ready to return to community.  She has learned from these

4  terrible errors of judgment, searched her soul for answers in her decision-making,

5  turned to her family for support and accepted that her future must begin again with

6  honest employment, such as waitressing.  She is ready to begin to live on the outside

7  after months in custody.

8        Accordingly, we ask the court to impose a sentence that would allow Kathy to live

9  in a half-way house on supervised release as soon as possible.

10       DATED:       April 9, 2009

11                    WRIGHT STANISH & WINCKLER

12

13       By:_____//ss//_____
                    KAREN C. WINCKLER, ESQ.
14                    Nevada Bar No. 2809
                     300 South Third Street   Ste 701
15                    Las Vegas, NV 89101
                     Attorney for Kathy Nelson

16

17

18

19

20

21

22

23

24

25

26

27

28                                      10

1

2 **<u>RECEIPT VIA E-FILING</u>**

3    I caused the foregoing SENTENCING MEMORANDUM to be  delivered via e-

4 filing to

5        Assistant US Attorney Kimberly Frayn
         333 Las Vegas Blvd. South    5th floor
6        Las Vegas, NV 89101

7 and hand-delivered to

8        PO Felipe Ortiz
         300 Las Vegas Blvd    1st floor
9        Las Vegas, NV 89101

10                          _Debbie Coroselli_
                                                      _____
11        An employee of Wright Stanish & Winckler

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                          11

EXHIBIT A

EXHIBIT A

Dear Judge Philip Pro:

My name is Louis Cruz; I live at E 330 Balmoral Dr. Shelton, WA. 98584.

I am writing on behalf of my daughter Kathy, nee Cruz, Nelson, who is currently awaiting sentencing in your court.

I worked as an engineer at The Boeing Company for most of my working years. I have been retired for the last ten years and since my retirement I had the opportunity to accompany Kathy on a trip to Alaska. I did not understand the kind of work she did, but soon after we arrived at Denaly National Park I watched her interact with people from many nationalities.  I felt very proud of her.

It was like a Job Fair. Denali was getting ready to close for the Winter and there were several other recruiters present trying to entice prospective employees . They had a variety of free gifts, cards, tour books, etc. Kathy had no free gifts, only a piece of cardboard with her name printed on it, yet her table was the most popular. Everyone seemed to like her and respected her.

Kathy is a bit of an egotist, and perhaps while pursuing 'her idea' of success she might've set her sights too high and when her goal was not met, she became bored, even to the point of depression. But one thing I can say about her is Kathy is basically honest; perhaps too honest for her own good.

I cannot imagine Kathy doing anything wrong willfully or knowingly. I do not think she knows enough or is malicious enough to deviously break the law. If she has, I have no knowledge of it but I can assure you Sir, that she has learned a most valuable lesson by being behind bars for so many months, including holidays and family celebrations such as Thanksgiving and Christmas. Soon she'll also miss Easter, and her own birthday.

Kathy is a bit naive, but has a kind heart; if she has erred in the past, I'm sure she is remorseful now.

In closing, I beg your honor to be lenient while sentencing her. I am sure her stay incarcerated for so many months has taught her a valuable lesson.

Very Sincerely yours,

*Louis Cruz*
MARCH 9, 09

March 6, 2009

Eileen Cruz
209 Cenizo
Rockport, TX 78382

Dear Judge Philip Pro,

      I am Eileen Cruz, mother of Kathleen Nelson.  I have been a registered nurse for the past 40 years and have recently retired.  I live in Rockport, Texas.  I have 3 children, Marguerite Newby, Kathleen and Christopher Cruz.

      I understand the offenses that Kathleen has been sentenced with.  I am somewhat familiar with her work but don't understand all the legalities of her work.  I realize that she has been involved in illegal activity but I believe it was her naiveté and ignorance not a malicious intent that lead her to this end.  She has never been involved in illegal activity that I know of.  Kathy is very conscientious about caring for her friends.  She lived for a time with my son, Christopher and always tried to take care of him and help him.  I am proud of the way she cares for those she loves.

      I believe that her intentions were good if not legal.  She has been incarcerated for the past 11 months and I believe that has affected her in a life altering way.  I would like for her to come to live with me where I can help her reestablish her life and pursue a new career. She has learned from this experience and I hope that you will consider allowing her to be released soon.   Please contact me if I can give you any additional information  Thank you for your consideration in this matter.

Sincerely,

*Eileen Cruz*

Eileen Cruz

March 17, 2009

Dear Judge Philip Pro,

My name is Jan Brockway. I am a retired medical health professional (medical technologist) and am 70 years old. I am the mother of three adult children and the grandmother of five. I have lived in the Pacific Northwest for many years.

I have known Kathy Nelson (nee Cruz) for almost 30 years having first met her when she was 14 years old when she visited her father in Everett, Washington. She was a part of the family whenever she came to visit and got along well with my children. She helped me with the household chores and seemed to like being a part of the family.

I am aware Kathy has pleaded guilty to mail fraud and is to be sentenced next month.

Kathy is a product of divorced parents and is the middle child with an older sister and a brother seven years younger than she. I also am divorced with three children (oldest son and 2 younger daughters) and I know the difficulty some children have when a divorce changes the family dynamics and their world doesn't have the comfort and safety it once had. I think this has had an effect on Kathy and some of the choices she has made came from the isolation she has felt, like running away from home (at age 14) and dropping out of school. She was a active precocious kid with endless energy and inquisitiveness, sometimes getting into trouble because she wanted to "do her thing " (testing the bounds).

I am not trying to be a therapist. These are some my thoughts after being around members of the family and hearing and seeing some of the situations which have occurred in the years I have known her. Kathy is not a bad person, she is a hurt vulnerable somewhat isolated individual with a great deal of potential. She has done things not in her interest but never with malicious or evil intent. Kathy is kind and sincere and needs a chance to succeed. I do believe she has learned a valuable lesson and I hope she will get the benefit of a doubt and the court will see that she is one that will see the opportunity she has been given and use it to her advantage. Kathy is a good person and I would like her to prove it to herself.

Kathy is a quiet spoken woman with many interests and capabilities but is limited somewhat because of formal education. Learning comes easily if she is interested in the material and she does have an inquiring mind. We have gotten into many talks about things she has done and places she has been.

My sister, Marilyn Louden, has visited her in prison and they have had some long conversations and both have enjoyed the time together. Marilyn and I have talked and we both want the best for Kathy and want her to have a chance to find out what she can do if given a second chance.

From the bottom of my heart I believe you would be helping a deserving person if you considered leniency for Kathy. Thank you for considering my letter.

Respectfully yours,

Janice L. Brockway

208 78th Pl. S.W.
Everett, WA 98203

Marilyn K. Snider                                    April 1, 2009
1653 Hollwood Dr
Las Vegas, Nevada 89119


Judge Phillip M. Pro
U.S. District Court


Dear Judge Pro
        The purpose of this letter is to address
inmate Kathy M. Nelson, plus introduce myself
and how I am connected with her.
        Las Vegas has been my home for 37 years.
I am very privileged to have served 31 years
working for the City of Las Vegas as a Leisure
Services Coordinator. It was a wonderful opportunity
to work with a very diverse community
allowing me to work and develop Kids Camps
safely, Senior programs plus helping homeless
get on their feet.
        I became acquainted with Kathy through
her father Luis Cruz and my sister Janice
Brockway of Seattle, Washington.
        In December 2008, I began visiting Kathy at
the Stewart/Mojave facility as a link between
her and her father. In these four months
we have developed a friendship and trust
plus have had discussions on her case,
politics, food and nutrition, our values in life,

and what the future might hold for her.

I fully understand the serious charges Kathy is facing. I believe that she is very aware of them and how seriously this has and will effect her life.

I am a certified life coach with excellent training from Dr. Chelia Carter Scott (Transformational Life Coaching) Due to this training my hours with Kathy were centered around, what our core values are? Who are we as women today? how to we treat other people? Integrity!

I, truly, believe that Kathy is a good person who made some very bad choices in life. She told me she was a loner and is now understanding the lessons this time in jail has taught her.

One area that amazed and impressed me about Kathy, was her concern for other inmates. She was concerned about a 22 yr old that had no person or place to go on her release. In our conversations she showed true feelings for others.

Thank you for taking your time to read this letter.

Sincerely,
Marilyn K. Snyder